**Alfred Lee SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0276–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 14, 1982.

62

Marian S. Rosen, Houston, for appellant.

John B. Holmes, Jr., Houston, for appellee.

Before PRICE, WARREN and DUGGAN, JJ.

## OPINION

PRICE, Justice.

This is an appeal from a bench trial conviction for commercially exhibiting obscene material. Punishment was probation of a $2000 fine for one year.

In twenty-seven grounds of error, the appellant attacks the validity of the information, the constitutionality of the warrant authorizing the search of the Westworld Adult Cinema, and challenges the admissibility of the evidence seized during the search and incident to his arrest. He further attacks the constitutionality of the Texas Obscenity statutes and challenges the sufficiency of the evidence to support the conviction.

This is a companion case to *McInnis v. State,* 634 S.W.2d 912, previously decided by this court. The record reflects that the conviction in the present case was the result of a stipulation based on the same testimony, motions and rulings in the jury trial conviction of McInnis.

On August 13, 1980, Officer S.R. Jett purchased a ticket from McInnis, a union projectionist, and entered the Westworld Adult Cinema. He viewed a film entitled "Inside Desiree Cousteau" which depicted various sex acts, then returned to his office and prepared an affidavit describing the movie, scene by scene, in detail. A search warrant was issued based on this affidavit.

Officer Jett and others returned to the theatre on August 15, 1980, with the warrant. They sat through two movies, "Inside Desiree Cousteau" and "All About Gloria Leonard," waited until the theatre closed, and then seized the film, business records, ticket stubs, advertisements of coming attractions, tally sheets, and weekly work schedules, and arrested the appellant who was the acting ticket seller and projectionist.

The appellant was charged under Section 43.23(c)(1), V.A.P.C., and the information in this case stated that the appellant:

Knowing the content and character of the material, intentionally exhibit to S.R. Jett obscene material, namely, one film

entitled "Inside Desiree Cousteau," which depicts patently offensive representations of actual and simulated sexual intercourse, and sodomy.

The appellant maintains that this information is defective because it alleges exhibition of a film as "obscene material," while Section 43.21(a)(3), V.A.P.C., defines a motion picture as a "performance," and exhibition of a performance is not prohibited under Section 43.23(c)(1), V.A.P.C.

The term "motion picture," while specifically defined as a performance, is also included in the definition of "material" in Section 43.21(a)(2), V.A.P.C., which states:

... anything tangible that is capable of being used or adapted to arouse interest, whether through the medium of reading, observation, sound or in any other manner....

The two sections are not irreconcilable and the allegation in the information does not fail to state an offense. The code must be construed according to the fair import of its terms, to promote justice and effect the objectives stated therein. Section 1.05, V.A.P.C.

The appellant next argues that the information is defective for generally alleging "exhibiting" whereas the element prohibited by Section 43.23(c)(1) is "promoting."

The definition of "promote" in Section 43.21(a)(5), V.A.P.C., includes "exhibit" as one of its many methods. While the word "exhibit" is not defined in the code, it has acquired the common meaning; "to show or display outwardly, especially by visible signs or actions." The only practical means of "exhibiting" a motion picture is through the use of a mechanical device that displays each frame of the film. We therefore hold that the information is not rendered voidable or subject to an attack for vagueness for specifically alleging the statutory method of "promoting," when that method is self-explanatory.

The appellant complains that the information does not specifically describe the "material."

Article 21.09, V.A.C.C.P. states that:

If known, personal property alleged . . . shall be identified by name, kind, number and ownership. . .

The information alleging the "material" as "one film entitled 'Inside Desiree Cousteau,' " and characterizing its contents, adequately apprises the appellant of that which he is to defend against.

The search warrant in this case authorizes the seizure of:

"1) a motion picture film entitled 'Inside Desiree Cousteau'

2) evidence tending to show that the aforementioned material was unlawfully promoted and exhibited in violation of the Texas Penal Code . . . including but not limited to any and all tickets and tally sheets showing the number of paid admissions. . ."

Appellant contends that the warrant is defective because the supporting affidavit was insufficient for a finding by an independent magistrate of probable cause for its issuance. Appellant also contends that the warrant is a general warrant in violation of the Fourth Amendment to the Constitution of the United States and Article 1, Section 9, of the Texas Constitution.

■ Before any obscene film or other item within the ambit of the First Amendment may be seized by the police, there must be a judicial determination that the material in question is probably obscene. *Roaden v. Kentucky,* 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973). In the present case only the film "Inside Desiree Cousteau" described in detail in the affidavit had been determined by the magistrate to be probably obscene. While the affidavit was sufficient to justify the issuance of a warrant to search for and seize the described film, it did not justify the issuance of a warrant to seize any other material that had not been subject to prior judicial scrutiny. *Lo-Ji Sales, Inc., v. New York,* 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979).

■ In addition to the absence of probable cause, the second clause of the warrant is unconstitutionally general. The Fourth Amendment to the United States Constitution and Article 1, Section 9, of the Texas Constitution prohibit general warrants which fail to particularly describe the property to be seized and allow general exploratory searches. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 564 (1971); *Gonzales v. State,* 577 S.W.2d 226 (Tex.Civ.App.1979).

■ Although the warrant is defective in part, it does not render invalid the entire warrant. The invalid portions are severable from the valid portions, and the items seized under the valid portions are admissible in evidence. *Aday v. Superior Court of Alameda County,* 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961); *Walthall v. State,* 594 S.W.2d 74 (Tex.Cr.App.1980).

■ The evidence seized during the search of the Westworld Adult Cinema, and admitted into evidence over objection, consisted of: the film, business records, a program schedule, weekly work schedules, tally sheets, ticket stubs, and coming attraction sheets. In addition, a used prophylactic was found lying between seats in the theatre. A photograph was taken of this item and subsequently introduced into evidence. Because the seizure of the film was authorized under the warrant, its admission into evidence was not error. All other items, including the photograph, fell within the invalid portion of the warrant and since their acquisition was not otherwise authorized by law, their admission in evidence was error. However, we are satisfied that the admission of this evidence did not contribute to the conviction, therefore it was harmless error beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The State's case would not have been significantly less persuasive had the evidence been excluded, *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), considering that the movie presents ninety minutes of the most explicit sex acts imaginable.

■ The appellant complains that the affidavit failed to reflect that it was signed prior to the issuance of the search warrant. This allegation is without merit. Both the

affidavit and search warrant reflect that they were signed on August 14, 1980, at 2:38 p.m., and the warrant states that it is based on the information contained in the affidavit.

■ The appellant contends that the film was removed from the theatre in violation of the Court's order contained in the warrant. The order authorized the seizure of the viewing device if the film could not be removed without it being damaged or destroyed. The record reflects that the officers, in removing the film, had to cut it so that it would fit on two separate reels. It was subsequently spliced together without damaging or destroying any of its content. This action on behalf of the officers confiscating the film substantially complied with the Court's order.

■ The appellant next complains that the search warrant was not based on probable cause because the magistrate did not personally view the film to make an independent determination of its "obscenity." This is not required. It is sufficient to rely on a detailed description of the entire film sworn to by the viewer, as was done in the present case. *United States v. Pryba,* 163 U.S.App.D.C. 389, 502 F.2d 391 (D.C.Cir. 1974); *Walthall v. State,* supra.

Appellant's final contention regarding the validity of the warrant is that the affidavit supporting the arrest warrant, which was a part of the search warrant, did not contain sufficient facts for a finding of probable cause that the appellant committed an offense in violation of Sections 43.21 and 43.23, V.A.P.C.

■ The warrant authorized the arrest of McInnis, not the appellant. We need not reach the question of the validity of the warrant authorizing the arrest of McInnis because the appellant was arrested as a result of engaging in criminal activity witnessed by the officers during the execution of the warrant. Probable cause to search a particular place may exist without there also being probable cause to arrest a person who occupies that place. Consequently, a search warrant is not rendered invalid because of a lack of grounds to arrest any particular person. The specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used, but rather as to the place to be searched and the thing to be seized. *United States v. Besase,* 521 F.2d 1306 (6th Cir.1975).

■ The appellant next claims that the trial court erred in refusing the appellant's request for a transfer of the case to another judge because of this judge's premature involvement in the case by signing the search warrant. The appellant claims that this action on the part of a judge violates Canon 3, Section C, of the Code of Judicial Conduct. Section C requires a judge to disqualify himself if his "impartiality might reasonably be questioned, ... including instances where the judge has ... personal knowledge of disputed evidentiary facts concerning the proceeding." It appears that the appellant assumes that the judge's involvement with the issuance of the search warrant automatically impairs his impartiality by giving him knowledge of disputed evidentiary facts. The appellant, while urging the court to agree with his contention, cites no cases in support thereof, nor does he point out the disputed evidentiary facts known by the trial judge, or illustrate how the judge's impartiality was impaired. We overrule this ground.

The next series of grounds attack the sufficiency of the evidence to establish guilt. Appellant maintains that the State failed to prove that the film "Inside Desiree Cousteau" was obscene, that he intentionally exhibited obscene material, or that he knew the content and character of the material.

All of the evidence in the instant case was presented by way of stipulation. The trial court was permitted to consider all of the evidence introduced in the companion case against McInnis. This evidence indicated that the Westworld Adult Cinema showed only sexually explicit films and refused admittance to any one under 18 years of age. The ticket booth displayed a sign stating: "If you might be offended by

viewing human nudity or the sexual acts of consenting adults do not enter." An advertising poster of the questioned movie was displayed on the wall inside of the theatre. A sign over the door exiting the theatre read "Cum Again."

A further agreement was offered whereby the appellant stipulated that on August 15, 1980, the date the officers executed the search warrant, the appellant was the projectionist and the clerk in control of the theatre.

■ The appellant's objection to the obscene nature of the film is predicated on the fact that the jury was shown only a cassette recording of the film instead of the confiscated 16 millimeter original. The cassette version was a true and exact copy of the original and its showing was sufficient evidence for a determination of obscenity. *West v. State,* 514 S.W.2d 433 (Tex.Cr.App. 1974).

■ In addition to the evidence introduced, the trial court was allowed to apply the permissive provisions of Section 43.-23(e), V.A.P.C. which provides that those who possess obscene materials or devices with intent to promote them in the course of their business are presumed to have knowledge of their character.

A close scrutiny of all matters considered by the trial court indicates in our opinion that the evidence is sufficient to establish all necessary elements of the crime as alleged in the information.

The appellant's next two grounds call our attention to an allegation of misapplication of the law in the present case as reflected by the court's charge in *McInnis.*

■ The appellant requested a definition of "prurient interest" which was denied. This denial, argues appellant, indicates the court's failure to apply the proper standard in determining the film to be obscene. Additionally, the appellant maintains that the absence of such a definition

in our statutes renders Section 43.21, V.A. P.C. unconstitutionally vague and overbroad. This lack of a statutory definition for the term "prurient interest" does not render the statute constitutionally deficient. *Red Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020 (5th Cir.1981), cert. denied, 455 U.S. 913, 102 S.Ct. 1264, 71 L.Ed.2d 453. This term has however been defined as "a shameful or morbid interest in nudity, sex or excretion that goes substantially beyond customary limits of candor in description or representation of such matters." *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Since our statute does not specifically provide a definition for this term, we assume that the trial court correctly followed this interpretation even though it refused such a definition in the court's charge in the *McInnis* case.

■ The appellant next maintains that the trial court erred in applying the definition of the term "knowingly" of section 6.03, V.A.P.C., when the information did not allege that the appellant acted "knowingly." He argues that this is a misapplication of the culpable mental state because it is unrelated to the specific element of the offense of promotion of obscene material of "knowing the content and character." We disagree.

V.T.C.A. Penal Code, Sec. 6.02, provides that a person does not commit an offense unless he intentionally, knowingly, recklessly or with criminal negligence engages in conduct as the definition of the offense requires. The conduct that is the gist of the offense of obscenity in this case is the promotion of obscene material with the requisite knowledge.[1] The information alleges the culpable mental state with which the appellant promoted obscene material; it alleges he exhibited obscene material "knowing its content and character." *Teniente v. State,* 533 S.W.2d 805 (Tex.Cr.App. 1976); *Ex Parte Casper Walters,* 566 S.W.2d 622 (Tex.Cr.App.1978).

1. V.T.C.A. Penal Code, Sec. 43.23(c)(1), provides:

"(c) a person commits an offense if, knowing its content and character, he:

(1) promotes or possesses with intent to promote any obscene material or obscene devices;"

The last series of grounds attack the constitutionality of our obscenity statutes. Many of the complaints address an accusation of facial overbreadth.

▆▆▆ When conduct, and not merely speech, is involved the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Facial overbreadth will not be invoked when a limiting construction can be placed on the challenged statute. *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). Embedded in the traditional rules governing constitutional adjudication is the principle that a person, to whom a statute may constitutionally be applied, will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. *Broadrick v. Oklahoma, supra.* We will therefore limit our review of the existence of any constitutional defect of a statute to an analysis of the facts and the applicability of the statute thereto.

Initially, the appellant's complaint centers around the Texas Statutes' deviation from the three element test [2] delimiting the scope of obscene expression unprotected by the First Amendment established by *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). He argues that a lack of definition of "prurient interest," the addition to the Miller catalogue of forbidden depiction of sexual acts in § 43.-21(a)(1)(B)(i), V.A.P.C., and the deviation from the Miller list of potentially obscene subjects as examples of sexual conduct in § 43.21(a)(1)(B)(ii), V.A.P.C., are constitutionally objectionable as facially overbroad and vague. All of these assaults were addressed by the Fifth Circuit Court in *Red*

*Bluff Drive-In, Inc. v. Vance,* 648 F.2d 1020 (5th Cir.1981). The Fifth Circuit overruled these objections and held that the Texas statutes, except for sections 43.21(a)(4), 43.-21(a)(5), 43.23(e), and 43.23(f), are constitutionally unobjectionable even though they slightly deviate from the *Miller* standard. They find fault with § 43.21(a)(4), which will be discussed below, but abstain from a constitutional adjudication of sections 43.-21(a)(5), 43.23(e) and 43.23(f), leaving the Texas Courts to apply special meaning to the language to achieve a constitutional application.

The appellant complains that the definition of "promote" in § 43.21(a)(5), as applied through § 43.23, is unconstitutionally overbroad because it invades the right of privacy guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution in that no commercial or public element is required to promote and § 43.23 punishes mere possession.

▆▆▆ The statute [3] defines "promote" in terms of nineteen verbs in an effort to criminalize every conceivable transaction of obscene materials and devices. As suggested in *Red Bluff,* supra, this statutory definition, considered along with those of obscene materials in § 43.21(a)(2) and devices in § 43.21(a)(7), includes far reaching prohibitions that the State cannot legitimately control, such as intimate bedroom conversations and physicians counseling patients on surgical procedures for the implantation of penile prostheses. However, the statute lends itself to a narrowing construction. In the present case, we are confronted with the accusation of one who promotes by "exhibiting" obscene material. This prohibited conduct is within the legitimate area of governmental control. Matters of obsceni-

---

**2.** Under *Miller,* expression goes beyond the limits of First Amendment protection if it: (1) taken as a whole appeals to the prurient interest; (2) depicts or describes specified sexual conduct in a patently offensive way and (3) taken as a whole, lacks serious literacy, artistic, political, or scientific value. This test must be applied with reference to "the average per-

son, applying contemporary community standards."

**3.** § 43.21(a)(5) "Promote" means to manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise, or to offer or agree to do the same.

ty may not be exploited, without limit, by films exhibited in places of public accommodations any more than live sex and nudity can be exhibited, without limit, in such public places. *Miller,* supra.

The appellant next complains that § 43.-23, V.A.P.C., is unconstitutional facially and as applied to him in that the presumptions in §§ 43.23(e) and (f), are violative of First, Fifth and Fourteenth Amendments to the Constitution of the United States.

To convict for the offense described in § 43.23(c)(1), the State must establish that a defendant knew the content and character of the proscribed item and that he intended to promote obscene material or an obscene device. Subsection (c) of § 43.23 establishes the presumption to aid the State in proving the knowledge and intent element of the offense as follows:

"A person who promotes or wholesale promotes obscene material or an obscene device or possesses the same with intent to promote or wholesale promote it in the course of his business is presumed to do so with the knowledge of its content and character."

To withstand the safeguards of due process, a statutory presumption establishing an element of a criminal offense must rest on a rational connection between the fact proved and the fact presumed. The presumption is "irrational" and "arbitrary" unless it can be said, with substantial assurance, that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend. *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Additionally, a presumption is constitutionally deficient, if in its application it would be interpreted by the fact finder as mandatory or conclusive, *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), or has the effect of shifting the burden of persuasion. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

We first consider whether the challenged presumption meets the "rational connection" test as applied to the facts of this case. A review of the evidence indicates that the appellant sold the tickets and was the projectionist for the film "Inside Desiree Cousteau." It was in the course of business of the Westworld Adult Cinema to advertise and show exclusively sexually explicit films, to prohibit admittance to those under eighteen years of age, and to warn patrons about sex and nudity displayed in the films. The theatre, in an effort to encourage its patrons to return to the theatre, posted a sign at the exit which read "Cum Again." We therefore conclude, that in the present case, the knowledge aspect of the presumption is a logical inference of the established facts of exhibiting obscene material in the course of the business.

Appellant argues that the effect of the questioned presumption infringed upon his privilege against compulsory self-incrimination. The application of a presumption and its effect in our regulatory scheme is determined by the way a reasonable fact finder interprets the trial court's instructions accompanying it. If the effect causes the fact finder to interpret the application of a presumption as "conclusive" or "mandatory" or in a manner that shifts the burden of persuasion from the State to the defendant, then it suffers from constitutional infirmities.

The Texas Penal Code § 2.05 minimizes these dangers by prescribing rules for the operation of Penal Code presumptions. It states:

§ 2.05 Presumption

When this code or another penal law establishes a presumption with respect to any fact, it has the following consequences:

(1) if there is sufficient evidence of the facts that give rise to the presumption, the issue of the existence of the presumed fact must be submitted to the jury, unless the court is satisfied that the evidence as a whole clearly precludes a finding beyond a reasonable doubt of the presumed fact: and

(2) if the existence of the presumed fact is submitted to the jury, the court shall charge the jury, in terms of the presumption and the specific element to which it applies, as follows:

(A) that the facts giving rise to the presumption must be proven beyond a reasonable doubt;

(B) that if such facts are proven beyond a reasonable doubt the jury may find that the element of the offense sought to be presumed exists, but it is not bound to so find;

(C) that even though the jury may find the existence of such element, the state must prove beyond a reasonable doubt each of the other elements of the offense charged; and

(D) if the jury has a reasonable doubt as to the existence of a fact or facts giving rise to the presumption, the presumption fails and the jury shall not consider the presumption for any purpose.

These instructions clearly describe the questioned presumption as a permissible inference capable of being rebutted. It allows, but does not require, a jury to draw conclusions about an accused's knowledge from his actions. Even if a jury believes all proved facts beyond a reasonable doubt, it is not required to find the presumed fact. Consequently, the application of the presumption does not have the effect of shifting the burden of persuasion from the State to the accused.

Likewise inherent in the statute, is the provision for the trial court to analyze the evidence to determine if, as a matter of law, the established facts prove beyond a reasonable doubt the existence of the presumption. For if such is not the case and the logical inference does not flow from the proved facts to the presumption, then such presumption is not permitted application in the case.

We therefore conclude that the statutory presumption inferring "knowledge" does not suffer from any constitutional infirmities. However, the fact finder is required to apply the provisions of § 2.05 in conjunction with the presumption. To the extent that this decision conflicts with a holding previously handed down by this court in *Skinner v. State,* 647 S.W.2d 686, this panel does not agree with that opinion.

Lastly, appellant complains that § 43.21, V.A.P.C., is unconstitutional, both facially and as applied to him, as the trial court failed to apply the contemporary community standards test to the second prong of the obscenity test, to wit: the patently offensive prong. He argues that the statute defines "patently offensive" in terms of community standards of "decency" rather than community standards of "tolerance" as required under *Miller.* Consequently, he maintains that the trial court applied the incorrect standard.

Section 43.21(a)(4), V.A.P.C., defines "patently offensive" as:

" . . . so offensive on its face as to affront current community standards of decency."

The court in *Red Bluff,* citing *Smith v. United States,* 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), stated that "the line between protected expression and punishable obscenity must be drawn at the limits of a community's tolerance rather than in accordance with the dangerous standards of propriety and taste."

While the Texas standard represents a subtle deviation from the accepted norm, it is nevertheless a significant one. The word "decency" and "tolerance" have different meanings and are not interchangeable. We believe that the legislative intent was to hold obscenity defendants to the community's norm of "proper" behavior and "taste" as opposed to a minimum standard of conduct the community is willing to tolerate. We therefore hold that the portion of § 43.21(a)(4) which permits the conduct of the accused to be judged on community standards of "decency" is unconstitutional, and order that the words "of decency" struck from the end of the paragraph. We further hold that the remaining portion of the paragraph is complete within itself and is capable of being executed in accordance with apparent legislative intent, indepen-

dently of the rejected portion. *Stonelake v. State,* 638 S.W.2d 619 (Tex.Cr.App.—Houston [1st Dist.] 1982).

We assume that the trial court, sitting as the trier of fact in the present case, determined the issue of "patently offensive" and "appeal to the prurient interest" by assuming the perspective of the average person and applying contemporary standards of decency rather than tolerance. Thus, the case is reversed and remanded so that the trier of fact can apply the standard of "tolerance."